# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

HEIDI E.[1],
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 3:22-cv-282
Newman, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Heidi E. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply (Doc. 11).

**I. Procedural Background**

Plaintiff protectively filed her application for DIB on December 5, 2019, alleging disability since June 1, 2018, due to chronic back pain, laminotomy hemilaminectomy with decompression of nerve root, partial facetectomy and bilateral foraminotomy, high blood pressure, depression, endometriosis, and menopause. (Tr. 20, 184). The applications were denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Kevin R. Barnes on May 25, 2021. (Tr. 36-60). Plaintiff and a vocational expert (VE) appeared by telephone and testified at the ALJ hearing.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

(*Id.*). On July 30, 2021, the ALJ issued a decision denying plaintiff's application. (Tr. 17-30). This decision became the final decision of the Commissioner when the Appeals Council denied review on August 8, 2022. (Tr. 1-4).

**II. Analysis**

    **A. Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2023.

2. [Plaintiff] has not engaged in substantial gainful activity since June 1, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: dyspnea; deviated nasal septum; obesity; and spinal stenosis and facet arthropathy, status-post laminectomy and decompression (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that [plaintiff] can never climb ladders, ropes, or

scaffolds. She can occasionally stoop and crouch. [Plaintiff] must avoid hazardous machinery and unprotected heights.

6. [Plaintiff] is capable of performing past relevant work as a Utilization Coordinator, DOT 079.262-101, a skilled job at the sedentary exertion level, performed by the claimant at the light exertional level. This work does not require the performance of work-related activities precluded by [plaintiff's] residual functional capacity (20 CFR 404.1565).[2]

7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 1, 2018, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 22-30).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[2] The ALJ relied on the VE's testimony to find, alternatively, that plaintiff would be able to perform the requirements of representative light, unskilled occupations in the national economy such as fast food worker (3,900,000 jobs); general cashier (570,000 jobs); and routing clerk (105,000 jobs). (Tr. 30, 57).

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D. Specific Errors**

On appeal, plaintiff argues that the ALJ's consideration of plaintiff's subjective symptoms was not supported by substantial evidence—particularly in relation to her lumbar spine impairment and back surgeries after June 2020. Plaintiff also argues that the ALJ erred in his consideration of the state agency medical consultants' opinions and the opinion provided by plaintiff's physical therapist, Tonya Hill. Finally, plaintiff argues that remand under Sentence Six of 42 U.S.C. § 405(g) is appropriate for consideration of the September 2021 opinion of James Hoover, M.D., a rehabilitation medicine specialist, following her May 2021 spinal fusion surgery.[3] Because these arguments are limited to plaintiff's physical residual functional capacity (RFC) and, in particular, her back impairments,[4] the Court begins with a summary of related medical evidence.

---

[3] The Appeals Council reviewed this opinion but found that it did "not relate to the period at issue" and therefore would "not affect the decision about whether [plaintiff was] disabled beginning on or before July 30, 2021[,]" the date of the ALJ's decision. (Tr. 2).

[4] Plaintiff does not raise any arguments related to other impairments, mental or physical, and any such arguments are therefore deemed waived. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

1. *Plaintiff's back impairments*

November 2017 imaging of plaintiff's lumbar spine revealed:

1. Degenerative grade 1 anterolisthesis of L3 on L4 with moderately severe central stenosis and severe narrowing of the lateral recesses. There is also foraminal compromise, severe on the right and moderately severe on the left with impingement of both exiting L3 nerve roots.
2. Mild broad-based disc bulge at L4-5 without central stenosis.
3. Early central stenosis at L2-3.
4. Sacral Tarlov cysts. . . .

(Tr. 567). Plaintiff ultimately underwent a minimally invasive decompression laser surgery procedure in October 2018. (Tr. 736). Later that month, plaintiff reported to pain management specialist/anesthesiologist Townsend Smith, M.D., that the surgery resulted in "dramatic improvement in her pain[,]" she could now walk on the treadmill for an hour at a time with some incline (resulting in 20 pounds of associated weight loss), and she no longer required opioid pain treatment. (Tr. 522). At a follow-up with Dr. Smith in June 2019, plaintiff continued to report improvement following the surgery, though without complete resolution—complaining of lumbar pain radiating intermittently into her right leg that Dr. Smith observed on examination. (Tr. 513). Plaintiff inquired about an epidural steroid injection for this "remaining component of pain[,]" and she and Dr. Smith agreed to reevaluate in three months. (Tr. 513, 516).

At a November 2019 follow-up with Dr. Smith, plaintiff again reported improvement, weight loss, and that she was "very happy about her overall pain control" but also continuing pain in the right lumbar region of her back. (Tr. 503, 506). At a visit later that month with plaintiff's primary care provider, Daniel L. Whitmer, M.D., plaintiff continued to report "great[] improve[ment]" since the surgery, daily exercise, and related weight loss. (Tr. 310).

6

By March of 2020, plaintiff decided to undergo a lumbar facet joint injection with Dr. Smith, as she continued to experience pain in her lumbar spine. (Tr. 629). Dr. Smith also added a muscle relaxer to plaintiff's medication treatment regimen for her muscle spasms. (Tr. 631). By July 2020, plaintiff's lumbar pain had exacerbated, and she underwent a trigger point injection by Dr. Smith. (Tr. 612-14). Later that month, plaintiff underwent further imaging, which demonstrated that her facet arthropathy and stenosis has progressed at the L3-L4 levels. (Tr. 586-87). At a follow up with Dr. Smith in August 2020, she reported no relief at all from the most recent injections and continued to experience severe (8/10) pain. (Tr. 600, 604).

In November 2020, plaintiff consulted with neurosurgeon Neal Mehan, M.D. (Tr. 669). Plaintiff reported progressively increasing back pain over the prior sixth months that was worse with activity, 8/10 in severity, and sometimes accompanied by bilateral numbness in her feet. (*Id.*). Dr. Mehan prescribed physical therapy. (Tr. 673). Dr. Mehan acknowledged that plaintiff could be a good candidate for additional surgery and scheduled the procedure for May 2021 subject to an interim consult and imaging. (Tr. 751-52).

Plaintiff began physical therapy with Ms. Hill in February 2021. (Tr. 707). At plaintiff's first follow-up, she reported having significant soreness and such a limited range of motion that it "made her frustrated." (Tr. 716). Plaintiff reported her pain at 7/10. (Tr. 719). After that session, plaintiff reported "increased pain" and numbness that led to a fall. (Tr. 722). Plaintiff reported her pain at 7/10. (*Id.*). At the next session, plaintiff again reported "increased pain" and a fall. (Tr. 725). Plaintiff reported her pain at 6/10 and that "e-stim" helped. (*Id.*). Though plaintiff reported "doing okay" at the next session, her pain level returned to 7/10. (Tr. 728). At

the next session, plaintiff reported her pain at 7-8/10 and that she "did not notice much change in pain like she was hoping." (Tr. 731).

At a follow-up with Dr. Mehan in March 2021, plaintiff reported severe pain (8/10) with "no improvement" following physical therapy. (Tr. 843). Dr. Mehan and plaintiff determined that she should proceed with surgery, which Dr. Mehan performed on May 14, 2021. (Tr. 848, 940). After surgery, plaintiff was discharged in stable condition with pain well-controlled; she was prescribed a raised toilet seat with arms and a walker. (Tr. 940, 942).

Plaintiff's ALJ hearing took place less than two weeks following this surgery. The ALJ had no medical evidence regarding plaintiff's condition following this surgery. At the hearing, plaintiff explained that she was still using the prescribed walker and raised toilet seat but did not otherwise elaborate on her condition just after the May 2021 surgery. (Tr. 49-50).

    2. *Symptom-consistency evaluation*

Plaintiff argues that the ALJ mischaracterized the record by extrapolating from records discussing the short-term impact of her May 2018 back surgery that her condition continued to be much improved after mid-2020. Plaintiff argues that the ALJ's reference to her ability to work part-time in late 2020 does not accurately portray her condition at that time. Finally, plaintiff argues that the ALJ's assessment of her condition following her May 2021 surgery is not based on substantial evidence but rather the ALJ's independent medical finding.

In response, the Commissioner argues that the ALJ properly considered the severity of plaintiff's symptoms under applicable agency regulations. In particular, the Commissioner highlights that the ALJ considered plaintiff's medications, non-medication treatment, daily

activities, and pain reports. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), (ii), (iv), and (v). The Commissioner argues that the ALJ's two references to plaintiff's May 2021 surgery demonstrate that he considered this procedure and its effects, and plaintiff's arguments otherwise invite the Court to impermissibly reweigh evidence.

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR[5] 16-3p, 2016 WL 1119029, at *2 (superseding SSR 96-7p). ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49. In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1. To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL

---

[5] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

    (i)    Your daily activities;

    (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    (vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a

conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit. . . ."). Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*, 818 F.2d 461, 463 (6th Cir. 1987)).[6]

---

[6] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility." With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference. At least one Sixth Circuit decision subsequent to the enactment of SSR 16-3p, however, has retained the notion of deference to the ALJ in the symptom-

The Court agrees with the Commissioner that the ALJ engaged in the regulatory analysis governing symptom evaluation. After a review of the record evidence cited in that analysis, however, the Court agrees with plaintiff that the ALJ's characterization thereof—as related to the period after June 2020—is not supported by substantial evidence. The ALJ's discussion of the relevant evidence appears to acknowledge that plaintiff's condition began to deteriorate after June of 2020—noting imaging that supported that conclusion, plaintiff's requests for further injection therapy, plaintiff's increasing reports of pain despite physical therapy,[7] and ultimate resort to further surgery. (Tr. 26-27, referring, e.g., to Tr. 586-87, 843, 940). Nevertheless, the ALJ dismissed this evidence because plaintiff "reported a lengthy period of relief following her first fusion surgery, . . . was able to work in the summer of 2020 on at least a part-time basis[,]" and "it appear[ed] that her second fusion surgery went well. . . ." (Tr. 27).

A nonspecific "lengthy period of relief" (*id.*) is not substantial evidence to support plaintiff's condition *after June 2020* given the specific evidence the ALJ himself catalogued showing plaintiff's deterioration, along with the fact that plaintiff ultimately resorted to further surgery. The ALJ's unsupported perception that the May 2021 surgery "went well" (*id.*) is also not substantial evidence to undermine the significant evidence of deterioration. *See Boyer v. Comm'r of Soc. Sec.*, No. 1:16-cv-644, 2017 WL 9515964, at *9 (S.D. Ohio May 1, 2017), *report and recommendation adopted*, 2017 WL 4324757 (S.D. Ohio Sept. 29, 2017) ("[C]ase law within

---

consistency context. *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements.").

[7] To the extent that the ALJ characterizes the physical therapy records as showing "some improvement" (Tr. 27), the Court does not find this conclusion supported by substantial evidence. For this proposition, the ALJ cites all of the physical therapy records as a whole and not to particular records. (*See id.*). The Court's review of the records shows consistently high pain levels without appreciable relief.

the Sixth Circuit . . . supports the general proposition that an ALJ should not 'play doctor' and make RFC determinations out of thin air, unsupported by medical evidence."). This leaves the ALJ's reference to plaintiff's part-time work during the latter part of 2020. Plaintiff testified, however, that she was able to work only from May-October 2020 until she had to stop because of increasing pain, which is consistent with plaintiff's reports elsewhere in the medical records that her back condition began to deteriorate at this time.

As related to the period after June 2020, the Court is simply unable to discern a "'logical bridge' between the evidence in the record and the ALJ's conclusion." *Mukes v. Comm'r of Soc. Sec.*, 946 F. Supp. 2d 737, 747 (S.D. Ohio 2013) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ's decision regarding plaintiff's subjective symptoms for the period after June 2020 is not supported by substantial evidence.

### 3. *Opinion evidence*

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions. *Id.* The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

Plaintiff argues that the ALJ erred in his consideration of the state agency medical consultants' opinions and the opinion of plaintiff's physical therapist, Ms. Hill. The ALJ found the state agency medical consultants' opinions persuasive because they were:

> consistent with the objective medical evidence and the claimant's history of improvement following treatment. The claimant has had relatively unremarkable orthopedic exams, and has described some relief with surgery, injections, and weight loss. However, I have added some further environmental restrictions based upon the claimant's subjective complaints.

(Tr. 28). The ALJ did not find Ms. Hill's opinion persuasive because it was:

> not supported by either Ms. Hill's own treatment notes or the balance of the record. Although the claimant has certainly had some pain and paresthesia due to her degenerative disc disease, her pain management visits have largely been unremarkable, and she had great success with fusion surgery. Moreover, the claimant was able to work at least part-time through much of 2020, again making this opinion less persuasive.

(*Id.*).

Plaintiff raises similar arguments with respect to the ALJ's treatment of these opinions as she did with respect to the ALJ's treatment of her subjective symptoms. In particular, plaintiff notes that the ALJ's discussion of these opinions' consistency with other objective medical evidence simply states, without elaboration or citation to particular records, that orthopedic and pain management visits were "unremarkable. . . ." (*See id.*). It thus fails to account for the objective medical evidence showing deterioration *after* June 2020.

As to the state agency medical consultants in particular, plaintiff argues that their opinions pre-date plaintiff's May 2021 surgery, and the ALJ's decision does not otherwise take that surgery into account beyond mere acknowledgement. *Cf. Blakley*, 581 F.3d at 409 ("[W]e require some indication that the ALJ at least considered these facts before giving greater weight to an

15

opinion that is not 'based on a review of a complete case record.'") (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)). As to Ms. Hill's opinion, plaintiff notes that the ALJ does not adequately address the supportability of her opinion, as the ALJ does not point to specific, inconsistent treatment notes.

In response, the Commissioner argues that the ALJ appropriately scrutinized the state agency medical consultants' opinions because he assessed greater restrictions than reflected in their opinions.[8] The Commissioner also argues that the ALJ appropriately discussed objective medical evidence that was consistent with the state agency medical consultants' opinions. With respect to Ms. Hill's opinion, the Commissioner argues that the general reference to Ms. Hill's treatment notes suffices to show—based on consideration of the ALJ's entire decision—that her opinion is not supportable. The Commissioner argues that the ALJ's references to "unremarkable" pain management visits, success with prior surgery, and part-time work explain why Ms. Hill's opinion is not consistent with record evidence.

The Court concludes that the ALJ's assessment of these opinions is not supported by substantial evidence because the ALJ failed to explain the consistency of these opinions with objective medical evidence in the record related to the period *after* June 2020. Also, the ALJ did not meaningfully explain the supportability of Ms. Hill's opinion with her own treatment notes. While the Commissioner argues that the ALJ's opinion "must be read as a whole" (Doc. 10 at

---

[8] The Court does not consider the parties' arguments regarding whether it was harmless error to omit from the RFC determination certain restrictions in these consultants' opinions without explanation because the other issues raised by plaintiff are dispositive. The Court also does not address the Commissioner's argument that Ms. Hill impermissibly opined on an ultimate issue because the ALJ did not discredit her opinion on this basis. *See Miller v. Berryhill*, No. 3:16-cv-94, 2017 WL 1021313, at *8 (S.D. Ohio Mar. 16, 2017) (explaining that the Court generally should not accept post-hoc rationalizations for agency action unless any associated error is harmless).

16

PAGEID 1026), it is not clear to the Court what portion of the ALJ's decision supports his general statement that Ms. Hill's opinion was "not supported by . . . [her] own treatment notes. . . ." The only possible support for this proposition that the Court can locate is the ALJ's statement that plaintiff "did initially note some improvement in . . . symptoms" with physical therapy. (Tr. 27). But after review of the underlying physical therapy records on which the ALJ purports to rely, and with the ALJ's own acknowledgement that plaintiff experienced no long-term benefit therefrom, the Court cannot locate the logical bridge to the conclusion that Ms. Hill's treatment notes are inconsistent with her opinion. *See supra* note seven at p. 12.

## III. Conclusion

The ALJ's decision at step four of the sequential evaluation process is not supported by substantial evidence. This matter should be remanded for further proceedings, including a renewed assessment of the consistency of plaintiff's symptoms of back pain with other record evidence after June 2020 and a reevaluation of the opinions of the state agency medical consultants and Ms. Hill. Given this conclusion, the Court declines to consider the parties' arguments related to a Sentence-Six remand.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Errors (Doc. 7) be **SUSTAINED in part as explained herein.**

2. The Commissioner's non-disability finding be **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Report and Recommendation.

Date: 7/24/2023

Karen L. Litkovitz
Chief United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

HEIDI E.,                                      Case No. 3:22-cv-282
    Plaintiff,                             Newman, J.
                                                Litkovitz, M.J.
    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned district judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).